# United States Court of Appeals for the Federal Circuit

———————————

NCUBE CORPORATION (now known as ARRIS Group, Inc.),
*Plaintiff-Appellant,*

v.

SEACHANGE INTERNATIONAL INC.,
*Defendant-Appellee.*

———————————

2013-1066

———————————

Appeal from the United States District Court for the District of Delaware in No. 01-CV-0011, Judge Leonard P. Stark.

———————————

Decided: October 10, 2013

———————————

GREGORY A. CASTANIAS, Jones Day, of Washington, DC, argued for plaintiff-appellant. With him on the brief were RYAN D. NEWMAN; and KRISTA S. SCHWARTZ and ISRAEL SASHA MAYERGOYZ, of Chicago, Illinois. Of counsel was MARY B. GRAHAM, Morris, Nichols, Arsht & Tunnell, LLP, of Wilmington, Delaware.

STEVEN M. BAUER, Proskauer Rose, LLP, of Boston, Massachusetts, argued for defendant-appellee. With him on the brief were KIMBERLY A. MOTTLEY, JUSTIN J. DANIELS and THOMAS HOEHNER. Of counsel was MELANIE

K. SHARP, of Young, Conaway, Stargatt & Taylor, LLP, of Wilmington, Delaware.

---

Before RADER, *Chief Judge,* PROST and TARANTO, *Circuit Judges.*

PROST, *Circuit Judge.*

On July 31, 2009, ARRIS Group, Inc. ("ARRIS")[1] filed a motion to hold SeaChange International Inc. ("SeaChange") in contempt of a permanent injunction order. The United States District Court for the District of Delaware found that ARRIS failed to meet its burden of showing contempt by clear and convincing evidence and declined to hold SeaChange in contempt. ARRIS appeals. Because the district court did not abuse its discretion in denying the contempt motion, we affirm.

I

ARRIS and SeaChange are providers of video-on-demand products and services. ARRIS owns U.S. Patent No. 5,805,804 ("'804 patent"), which discloses and claims a media server capable of transmitting multimedia information over any network configuration in real time to a client that has requested the information. The patented technology allows a user to purchase videos that are then streamed to a device such as a television.

ARRIS commenced the present litigation on January 8, 2001, alleging the infringement of certain claims of the

---

[1]    When the underlying litigation in this case began, ARRIS was known as nCUBE Corporation. Eventually, nCUBE Corporation was acquired by C–COR Corporation. Subsequently, ARRIS purchased C–COR. For clarity's sake, we refer to nCUBE, C–COR, and ARRIS collectively as ARRIS.

'804 patent by SeaChange's Interactive Television ("ITV"). On May 28, 2002, the jury returned a verdict in ARRIS's favor, finding that SeaChange willfully infringed the asserted claims in the '804 patent. We later affirmed the jury verdict and the district court's subsequent decision to enhance the damages award. *See nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317 (Fed. Cir. 2006).

Following our affirmance, on April 6, 2006, the district court entered a permanent injunction enjoining SeaChange from selling products that infringe the '804 patent. Specifically, SeaChange was enjoined from "making, using, selling, or offering to sell . . . the SeaChange Interactive Television System . . . as well as any devices not more than colorably different therefrom that clearly infringe the Adjudicated Claims of the '804 patent." *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 341-42 (D. Del. 2011).

Seven days after the 2002 jury verdict, and approximately four years before the entry of the permanent injunction, SeaChange began to modify its ITV system. Soon after, SeaChange released a system that it views as outside the scope of the '804 patent. Naturally, ARRIS disagrees. The parties attempted to resolve their differences without litigation, but failed. On July 31, 2009, ARRIS filed a motion in the United States District Court for the District of Delaware seeking to hold SeaChange in contempt of the permanent injunction alleging that SeaChange's modifications were minor changes that did not remove any key components or the relevant functionality that formed the basis for the jury's infringement verdict. The district court found that ARRIS failed to prove contempt by clear and convincing evidence and, therefore, declined to hold SeaChange in contempt. ARRIS appeals.

A

Only claim 4 of the '804 patent—specifically, the italicized limitation below—is at issue in this appeal.

4. A computer-implemented method for retrieving and transporting multimedia data between a client and a server on a network, said computer-implemented method comprising the steps of:

receiving a client request for initialization in a message to an upstream manager in said server, said upstream manager being coupled to a first network;

obtaining an upstream physical address for said client as said client request enters said server;

allocating a downstream physical address and downstream logical address to said client corresponding to the upstream physical address obtained for said client, said downstream physical address being used by a downstream manager for sending a stream of said multimedia data from a service on said server to said client, said downstream manager being coupled to a second network; and

*updating a connection service table with said upstream physical address*, said downstream physical address, and said downstream logical address for said client.

'804 patent col. 25 ll. 22-42 (emphasis added).

In order to function, the ITV system utilizes a series of identifiers, including one known as the ClientID and another known as the SessionID. The ClientID is a 20-byte data field containing addressing information including, inter alia, a 6-byte MAC address. The SessionID is a

10-byte data field that also includes the 6-byte MAC address. At the May 2002 trial, ARRIS's expert, Dr. Schonfeld testified that the ClientID met the upstream physical address limitation of claim 4, and that the system's Connection Table (combined with something called the Stream Table) met the connection service table limitation. J.A. 5024. Dr. Schonfeld also explained how the upstream physical address was updated in the connection service table and how the accused system actually used the ClientID to refer to the particular client. *Id.* Notably, neither ARRIS, nor its expert, ever mentioned the SessionID as potentially being the upstream physical address. And while a SeaChange witness stated in passing that the SessionID was another identifier of the client, J.A. 5164, ARRIS's infringement proof and argument included no contention that the system found to infringe used the SessionID as such an identifier, and ARRIS does not contend that the modified system does so either.

Following the jury verdict of infringement, SeaChange modified its system so that the Connection Table (i.e. the "connection service table") in the ITV system no longer received the ClientID. Instead, the processing of the ClientID that previously occurred in the Connection Table in SeaChange's infringing ITV system was relocated and performed elsewhere in SeaChange's modified ITV system. The district court pointed out that there are a number of facts to which the parties agree:

> The parties do not dispute that, as a result of SeaChange's redesign efforts, the Connection Table is no longer updated with the ClientID in the modified ITV system. Nor do the parties dispute that the Connection Table is updated with the SessionID in both the infringing and modified ITV systems; this functionality was not changed during SeaChange's redesign efforts. The parties likewise appear to agree that the ClientID and SessionID both contain the same 6-byte "MAC ad-

dress" information. Thus, whereas SeaChange's infringing ITV system previously updated the Connection Table with both the ClientID and SessionID (each containing the same MAC address information), the modified ITV system now updates the Connection Table with only the SessionID (which still contains MAC address information).

*nCube Corp. v. SeaChange Int'l Inc.*, CA 01-011-LPS, 2012 WL 4863049 (D. Del. Oct. 9, 2012).

## II

On a contempt motion, the party seeking to enforce the injunction bears the burden of proving by clear and convincing evidence "both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011) (en banc). While we review the grant or denial of a motion for contempt of an injunction for abuse of discretion, *see Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012), we review the finding as to whether two products are more than colorably different for clear error. *TiVo*, 646 F.3d at 883. A district court abuses its discretion, by definition, where its decision rests on an error of law. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005).

Prior to *TiVo*, the colorable-differences prong required determining "whether 'substantial open issues with respect to infringement to be tried' exist." *TiVo*, 646 F.3d at 883 (quoting *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1532 (Fed. Cir. 1985)). In *TiVo*, we rejected "that infringement-based understanding of the colorably different test." *Id.* at 882. Rather, in determining whether more than colorable differences are present the court focuses "on those elements of the adjudged infringing products that the patentee previously contend-

ed, and proved, satisfy specific limitations of the asserted claims." *Id.* We went on to explain in *TiVo* that:

> Where one or more of those elements previously found to infringe has been modified, or removed, the court must make an inquiry into whether that modification is significant. If those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant. Contempt is then inappropriate.

*Id.* Finally, we must be mindful that contempt "is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885).

## A

ARRIS bore the burden of proving both that the modified ITV system is not more than colorably different from the ITV system found to infringe and that the modified ITV system actually infringes. *TiVo*, 646 F.3d at 882-83. The district court concluded that ARRIS proved neither.

The thrust of ARRIS's argument with respect to the colorable-differences prong of *TiVo* is that while the ClientID in the modified system no longer meets the "upstream physical address" limitation because it is no longer updated in the Connection Table, the Connection Table in the modified system is still updated with the SessionID. ARRIS contends that the differences between the ClientID and the SessionID are not significant and, therefore, no more than colorable.

Prior to beginning its analysis, the district court noted that only the ClientID of SeaChange's infringing ITV system was previously accused at trial as satisfying the

"upstream physical address" limitation. *nCube*, 2012 WL 4863049, at *4. The ClientID in the modified system performs the same task as it did in the old system, but it does so in a way that all parties agree is non-infringing. *Id.* Thus, the court held that ARRIS did not prove by clear and convincing evidence that there is no colorable difference between the ClientID in the two systems. The court also found that ARRIS could not rely on the SessionID to meet this prong of *TiVo* because it was not identified at trial as meeting this limitation. *Id.* at *5.

ARRIS contends that the court erred by ignoring the "removed" language of *TiVo* and failing to analyze whether removing the ClientID from the Connection Table was a significant change to the system when the SessionID remains. *TiVo* states that "[w]here one or more of those elements previously found to infringe has been *modified, or removed* the court must make an inquiry into whether that modification is significant." *TiVo*, 646 F.3d at 882 (emphasis added). According to ARRIS, the ClientID was removed, not modified and the district court failed to analyze the system as one in which the element had been removed. ARRIS contends that court erred because it accepted the removal of the ClientID as dispositive of the colorable-differences prong. In short, ARRIS argues that the district court ended its analysis where it should have begun. We disagree.

The difference between the infringing and modified systems represents a modification rather than a removal of the accused element. The relevant element of the adjudged infringing system is the Connection Table, which was updated with the ClientID. Neither the Connection Table, nor the ClientID were removed from the infringing device. Rather, the ClientID was moved out of the Connection Table and placed elsewhere in the modified system. The district court found this modification significant because the ClientID still performs the same relevant functions in both systems, but does so in a way

that all parties admit puts the ClientID outside the claim, i.e., not through updating in the Connection Table. That is a significant change to the system. The district court properly found that ARRIS "failed to prove, by clear and convincing evidence, that there is no colorable difference between the ClientID functionality in the infringing ITV system and the ClientID functionality in the modified ITV system." *nCube*, 2012 WL 4863049, at *5.

ARRIS also argues that the court erred in its analysis by failing to compare the Connection Table of the infringing system, which is updated with both the ClientID and the SessionID, with the Connection Table of the modified system, which is updated only with the SessionID. In short, ARRIS argues that the ClientID and SessionID each contain the same 6-byte MAC address information and, therefore, the Connection Table in both versions of the system is updated with the MAC address. In the infringing system the Connection Table was updated with the two MAC addresses and in the modified system it is updated with only one. That, according to ARRIS, is an insignificant difference.

In order for this argument to hold sway, the MAC address must be the portion of the ClientID that meets the upstream physical address limitation of claim 4. The problem is that ARRIS never relied on the MAC address at trial to prove infringement. Rather, ARRIS relied on the ClientID to prove infringement, but never called out the MAC address as the infringing aspect of that element. As it stands, there are significant differences between the ClientID and the SessionID. As is evident from the district court opinion, they are made up of different constituent numbers and are actually used in SeaChange's systems to perform distinct functions. ARRIS does not challenge these facts.

Finally, ARRIS complains that it need not prove every possible avenue of infringement at trial and, as such, it

was under no obligation to prove that the SessionID also met the upstream physical address of the claim. Though ARRIS is correct that it need not prove every avenue of infringement, it is likewise true that the determination of whether more than colorable differences are present requires the court to focus "on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims." *TiVo*, 646 F.3d at 882. As the separation of the colorable-differences and infringement components in *TiVo* indicates, the colorable-differences standard focuses on how the patentee in fact proved infringement, not what the claims require. In this way, the *TiVo* standard preserves values of notice and preservation of trial rights by keeping contempt suitably limited. Here, as already described, ARRIS's infringement proof focused specifically on the ClientID, not the Mac address or the SessionID, and—whether unnecessarily or not—stressed how the accused system actually used the ClientID, as to which the SessionID is colorably different.

## III

For the foregoing reasons, we conclude that the district court did not err in its factual findings and, therefore, did not abuse its discretion in denying ARRIS's motion for contempt. Because we affirm the district court's analysis with respect to its treatment of the colorable-differences prong of *TiVo*, we need not reach the question of actual infringement by the modified ITV system.

**AFFIRMED**