[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10023

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2012
JOHN LEY
CLERK

D. C. Docket No. 05-00059-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NORMA BRADLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(July 13, 2012)

Before DUBINA, Chief Judge, EDMONDSON, Circuit Judge, and GOLDBERG,[*] Judge.

---

[*]Honorable Richard W. Goldberg, United State Court of International Trade Judge, sitting  by designation.

PER CURIAM:

This case involves the interpretation of specific written agreements --
consent orders -- binding criminal defendants, the wives of some of the defendants,
and the government, about property to be forfeited as part of some of the
defendants' sentences.

Norma Bradley, a non-defendant and the wife of a defendant, signed the
consent orders. Mrs. Bradley later petitioned for an ancillary hearing to determine
her ownership rights to certain property that the government claims was forfeited
per the consent orders. Because the consent orders are ambiguous about whether
Mrs. Bradley relinquished her ownership interest in the pertinent property, we
vacate the district court's dismissal of her petition and remand the case to the
district court to hear her claims.

I.

This appeal arises from a prescription-drug-based fraud scheme for which
eight people and two corporations were indicted for various crimes. After a trial, a
jury convicted Martin J. Bradley, Jr., his son Martin J. Bradley, III (the "Bradley

Defendants"), Albert Tellechea,[1] and Bio-Med Plus, Inc. ("Bio-Med," and together with the Bradley Defendants, "Defendants") of most counts.[2]

Defendants were entitled to have a jury decide the government's allegations of forfeiture, which were charged in the indictment. But, instead of a forfeiture proceeding and a jury verdict, the government and Defendants -- Bradley, Jr., Bradley III, and Bio-Med -- consented to the trial court's entry of two orders: a "Consent Preliminary Order of Forfeiture" (the "POF"), and an "Order Appointing Receiver and Monitor" (the "Receivership Order"). Norma Bradley and Maria Bradley[3], the wives of Bradley, Jr. and Bradley III, respectively, signed the consent orders. In April 2006 the trial court entered the consent orders. At sentencing in September 2006, the trial court ordered the Bradley Defendants and Bio-Med to pay fines and restitution; and the court incorporated the POF into the judgment.[4]

---

[1] Tellechea's sentence involved no forfeiture.

[2] The defendants all appealed their convictions and their sentences. We affirmed all of the convictions and two of the defendants' sentences. We vacated the sentences of two other defendants and remanded their cases to the district court for resentencing. See United States v. Bradley, 644 F.3d 1213 (11th Cir. 2011). More recent, we affirmed the district court's denial of the defendants' motions for a new trial. United States v. Tellechea, Nos. 09–12062, 09–12063, 09–12229, 09–12230, 2012 WL 1939242 (11th Cir. May 30, 2012).

[3] Norma and Maria share a married name (Bradley). When we refer to Mrs. Bradley, we mean only Norma Bradley.

[4] The district court did not incorporate the Receivership Order into the judgment.

3

This appeal centers on Norma Bradley's involvement with the consent orders. Mrs. Bradley was no defendant. She was not charged in this case -- she is the wife of Defendant Bradley, Jr. Mrs. Bradley signed the POF and the Receivership Order. She signed each of those consent orders under a line that said "Agreed to."[5] One month after sentencing, after the district court had incorporated the POF into the judgment against Defendants, Mrs. Bradley filed a verified petition for a hearing about the forfeiture of certain property. She asked for this statutorily-provided procedure -- an ancillary proceeding -- to determine her rights in certain property that the government claimed was forfeited and subject to seizure.

In her petition for an ancillary proceeding, Mrs. Bradley claims ownership of (1) real property (a house in South Carolina and forested property in Georgia); (2) corporate shares of three companies; (3) two $4,000 certificates of deposit; and (4) a coin collection.[6] Mrs. Bradley alleges (in the verified petition) that this property

---

[5] We attach the consent orders as appendices to this opinion: the whole POF is attached as Appendix A, and excerpts of the Receivership Order are attached as Appendix B. No one contends these orders are void or not binding -- according to the orders' terms -- on the government or on Mrs. Bradley.

[6] Mrs. Bradley attached to her petition as exhibits some documents, including copies of both of the pertinent consent orders.

belongs to her personally.[7]  In addition to her request for a hearing, Mrs. Bradley asked that, "to fully document her ownership of these assets," she be allowed to review records that the government has removed from her possession.

The district court ordered the government to respond to the petition; the government responded to Mrs. Bradley's petition and moved to dismiss the petition.  The government argued that Mrs. Bradley was entitled to no judicial determination about her ownership of the property in her petition because she had no standing to contest the forfeiture.  The government argued that, pursuant to Federal Rule of Criminal Procedure 32.2(a)(1)(A), Mrs. Bradley's petition should be dismissed because Mrs. Bradley's signing of the consent orders, as a matter of law, foreclosed her asserting ownership of the property in her petition.  The district court granted the government's motion to dismiss Mrs. Bradley's petition for an ancillary hearing.[8]

The district court's dismissal of Mrs. Bradley's request for an ancillary proceeding reads this way: "she negotiated for the disposition of assets in which she claims an interest, and she is bound by the Consent Order, which in turn

---

[7] Mrs. Bradley, in her petition, says under oath that she owns the petitioned-for property personally and individually, except for the shares of one of the corporations, which Mrs. Bradley says she owns jointly with her husband.

[8] The district court held no hearing about the motion to dismiss or about Mrs. Bradley's ancillary petition.

authorizes the denial of her Ancillary Petition." Mrs. Bradley appeals the dismissal of her ancillary petition, and she appeals the denials of her requests for a hearing and for discovery to document her ownership of the specific assets in her petition.

## II.

We review <u>de novo</u> the district court's conclusions about third-party claims to forfeited property. <u>United States v. Marion</u>, 562 F.3d 1330, 1335 (11th Cir. 2009). And, like our <u>de novo</u> review of a district court's contract interpretation, we review <u>de novo</u> a district court's decisions about what a consent order means and about whether a consent order is ambiguous. <u>Reynolds v. Roberts</u>, 202 F.3d 1303, 1312-13 (11th Cir. 2000).

## III.

Briefly stated, the government argues that, because Mrs. Bradley signed the consent orders, she now -- as a matter of law -- has no interest in property covered by the consent orders; so the government says, she lacks standing to bring this ancillary proceeding. The main question for us is what property the consent orders actually cover. To be more specific, we must decide whether the consent orders cover the particular property in which Mrs. Bradley now claims her own ownership interest in the ancillary petition. In the light of the wording of the consent orders, we conclude that the consent orders are ambiguous about whether Mrs. Bradley "agreed to" relinquish her ownership of the specific property she has listed in her petition for an ancillary proceeding.

On their face, the consent orders reasonably can be interpreted more than one way; the text of the consent orders is sufficiently ambiguous that the orders are no bar to Mrs. Bradley's arguing that she owns the pertinent property set out in her petition. The government can point us to no language in the consent orders that says unambiguously something like what the government says the orders mean: that Mrs. Bradley lacks an ownership interest in any and all property -- including

7

property like the coin collection -- except the particular property specifically listed in the consent orders.[9]

## A.

Because of their convictions for violating 18 U.S.C. sections 1956, 1957, and 1962, Defendants -- in the criminal prosecution -- were subject to the criminal forfeiture provisions of 18 U.S.C. sections 982 and 1963. After the court or a jury -- or in this case, the government and Defendants by consent -- determines what property is subject to forfeiture, the trial court is required to enter a POF.[10] FED. R. CRIM. P. 32.2(b)(1)-(2). The entry of a POF authorizes the government to seize the specific property and to begin ancillary proceedings to cut-off or to determine third-party rights in the property. Id. at 32.2(b)(3), (c); United States v. Davenport, 668 F.3d 1316, 1320 (11th Cir. 2012).

---

[9] Among the property listed in the consent orders that the government says is the only property Mrs. Bradley still owns are "personal contents, furnishings, and personal items pertaining to" Mrs. Bradley. That a coin collection in Mrs. Bradley's personal safe -- a collection that she has accumulated over time -- may actually be the kind of "personal item" that Mrs. Bradley still owns after signing the consent orders is especially reasonably arguable: apart from everything else, the coin collection might constitute "personal items" as listed in the consent order.

[10] In this case, the POF was a consent order; but the POF need not be by consent.

A claimant to forfeited property begins this kind of ancillary proceeding with a verified petition. If a third party -- not the criminal defendant whose property was forfeited -- submits a petition asserting an interest in property subject to a POF, "the court must conduct an ancillary proceeding." 21 U.S.C. § 853(n); FED. R. CRIM. P. 32.2(c)(1).[11]

In a third-party ancillary proceeding for criminally forfeited property, the district court may rule on a motion to dismiss the petition (a petition asserting an interest in the property) for lack of standing, for failure to state a claim, or "for any other lawful reason." Id. at 32.2(c)(1)(A). When deciding the motion to dismiss, the district court treats the motion to dismiss like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). Marion, 562 F.3d at 1342. This kind of civil-rules treatment means, among other things, that the district court ordinarily must assume the facts asserted in the petition (for example, asserting ownership) are true. FED. R. CRIM. P. 32.2(c)(1)(A).

To contest an order of forfeiture in an ancillary proceeding, a person must have standing to do so. Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258,

---

[11] Criminal forfeiture procedures for Defendants' convictions are the same as those for violations of 21 U.S.C. section 853. Section 1963 is "substantially identical" to section 853, and section 982 expressly incorporates the standards and procedures outlined in section 853. United States v. Soreide, 461 F.3d 1351, 1354 (11th Cir. 2006); United States v. Gilbert, 244 F.3d 888, 907 n.47 (11th Cir. 2001).

1262 (11th Cir. 2006).  Each element of standing must be supported "in the same way as any other matter on which the plaintiff bears the burden of proof" at that stage of the litigation.  Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992).  To have standing to contest forfeiture of property at the motion-to-dismiss stage, an ancillary-proceeding petitioner must allege facts that, if true, would establish that she is an owner of, or at the least, has a possessory interest in,[12] the seized property.  See United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1544 (11th Cir. 1987).

If Mrs. Bradley, by signing the consent orders, relinquished her ownership interest in and claims to the property specified in her petition, she lacks standing to challenge the forfeiture of the property.  So we look at the consent orders closely.

B.

The two consent orders in this case have different functions and for that reason, different content.  Among other things, the POF describes the forfeiture in this case, describes the government's responsibility to publish notice of forfeiture,

---

[12] The basis of Mrs. Bradley's petition for an ancillary hearing is stated to be her ownership of the pertinent property, not her possessory interest -- if she has one -- in the property.

10

and authorizes the government to discover property subject to forfeiture. The Receivership Order, among other things, addresses the appointment of a monitor and a receiver, and gives the receiver authority and direction to discover, to collect, and to assume control of Defendants' assets, other than those assets listed in the Receivership Order as exempt.

The exact language of these particular consent orders is the focus of our decision today; so we describe and quote first some language from the POF and second some language from the Receivership Order. Then, we explain why the consent orders provide no unambiguous answer to the legal question of what property Mrs. Bradley might still own.

The POF begins this way: "Defendants [Bio-Med and the Bradley Defendants] . . . consent to the entry of this Order." The POF then says that "the above Defendants agree along with the government that the forfeiture aspects of this case should be resolved by consent." The consent order was "submitted by all parties in the desire to reach a comprehensive settlement of the forfeiture aspects" of the case "without the need to resort to further legal proceedings." Mrs. Bradley was not a defendant. Mrs. Bradley was not a party to the criminal case.

In the section "a) FORFEITURE JUDGMENTS," the POF then describes the forfeiture in this case. First, the POF describes the forfeiture of $39.5 million

11

against the Bradley Defendants and Bio-Med.  About the $39.5 million, the POF says "[i]t is recognized that this amount is made up of $2,000,000 from Norma Bradley for which the government agrees not to seek any forfeiture against 702 Viewpoint, Savannah, Georgia."  Second -- in section "b)" -- the POF describes the forfeiture of Bio-Med, providing for the sale or liquidation of Bio-Med.  In section "b)," fully entitled "b) FORFEITURE OF BIO-MED PLUS, INC.," the POF also says "[f]or purposes of this agreement only, the government recognizes the claims of Maria Bradley and Norma Bradley in Bio-Med Plus, Inc."  In that Bio-Med section, the next sentence says "these interests do not impact the judgment amount as the parties have arrived at the judgment along with Maria and Norma Bradley as a compromise of their competing interests."

Without setting out a new or different heading or otherwise marking a new section, the POF then provides that the government would publish notice so that "any person, other than the Defendants herein (and Maria and Norma Bradley who are also resolving their claims by this Order and the associated Receivership Order), having or claiming a legal interest in the properties" could file a petition asserting their interest.  The POF includes no explicit definition of "the properties" referred to, and includes no definite explanation of which "claims" were resolved.

12

Mrs. Bradley, however, admits that she -- by the consent orders -- relinquished her ownership interest in and claims to Bio-Med.

The Receivership Order appointed a receiver and a monitor, and gave the receiver the authority to, among other things, "marshal and safeguard all of the Defendants' assets other than those identified as exempt in this [the Receivership] Order (collectively, 'the Non-Exempt Assets'); and take whatever actions are necessary for the liquidation of such Non-Exempt Assets" to satisfy the judgments of the district court. The Receivership Order -- in section "IV" -- then identifies a list of exempt assets "not subject to forfeiture, transfer to, or seizure by the Receiver." The "exempt assets" are divided into two lists: one "As to Maria Bradley," and the other "As to Norma Bradley." Section "IV" ends with this paragraph:

> To the extent that assets are discovered or identified which have not been identified to the government in the course negotiations [sic] related to this order, the government is free to pursue at its discretion those newly discovered assets in addition to the $39,500,000 judgment entered in the Preliminary Order of Forfeiture.

C.

13

We interpret a consent order -- a kind of contract -- the same way we interpret other kinds of contracts.[13]  A contract is ambiguous if it is susceptible to two different interpretations, each of which can be reasonably inferred from reading the contract.  If a contract is ambiguous about forfeiture, however, we resolve the ambiguity against forfeiture; forfeitures are not favored.  A.L. Williams & Assoc. v. Faircloth, 259 Ga. 767, 767-68 (Georgia 1989) ("While forfeitures are not unlawful, the law does not favor them, and all ambiguities in a contract are to be resolved against their existence."); see also Rodriguez v. Miranda, 234 Ga. App. 779, 783 (Ga. Ct. App. 1998) (no forfeiture will be implied because the "settled public policy of [Georgia] is that forfeitures are not favored.").  The consent orders in this case are ambiguous about which of Mrs. Bradley's assets are the assets in which she has given up her ownership interests and claims, as a result of the consent orders.[14]

---

[13] "We interpret a consent decree [entered by a federal court] as we would a contract," applying state-law contract principles. Frulla v. CRA Holdings, Inc., 543 F.3d 1247, 1252 (11th Cir. 2008).  The consent orders in this case were both signed in and entered by a federal court sitting in the state of Georgia; we apply Georgia contract law.

[14] We decide nothing today about the consent orders' effect on the ownership interests -- if any -- of Defendants or of third-party claimants other than Mrs. Bradley.  Mrs. Bradley is the sole appellant here.

14

The government's argument, that Mrs. Bradley has no ownership interest in the specific property she petitions about, centers on the list of "exempt assets" in the Receivership Order. First, the government argues that all of Mrs. Bradley's assets -- the whole extent -- are covered by the consent orders. The government then says that only those of her assets set out on the "exempt list" are free from forfeiture. According to the government, Mrs. Bradley's property -- if she had any -- that does not appear on the "exempt list" of the Receivership Order, is, therefore, "non-exempt property" and is subject to complete forfeiture. We disagree that this proposition is sufficiently clear from the consent orders' words. The consent orders arguably mean, but do not unambiguously mean -- and do not actually say -- that Mrs. Bradley was left with and owns no property (however accumulated in her lifetime) except those items specifically listed in the Receivership Order.

The consent orders are silent about what happens to the assets that belong to non-defendants (like Mrs. Bradley) and that are not set out on the "exempt list": the universe of non-exempt assets of non-defendants. In fact, the consent orders expressly discuss the non-exempt assets of Defendants only. The term "non-exempt assets" is actually defined in the Receivership Order by reference just to Defendants: "all of the Defendants' assets other than those identified as exempt in this Order (collectively, 'the Non-Exempt Assets')." And the Receivership Order

15

states that title to all non-exempt property of Defendants shall vest in the receiver; the consent orders are silent about title to non-exempt property of non-defendants. Mrs. Bradley is -- to repeat the point -- a non-defendant. Other statements in the Receivership Order about control over and disposition of non-exempt property refer to the non-exempt assets of Defendants: never to non-exempt assets of non-defendants.[15]

In the government's brief, the government's response to the consent orders' silence about non-exempt assets of non-defendants is that "the only exempt assets of the defendants (and their wives) are the assets listed in the receivership order." But given the words of the orders, this response does not convince us: the phrase "exempt assets" might well refer to Defendants' assets only and may possibly not touch upon things that were (and are) no asset of Defendants, but were (and are) a true asset of Mrs. Bradley personally. That Mrs. Bradley retains -- of all property she might own individually and apart from her husband -- only the listed "exempt assets" we suppose is one reasonable interpretation of the consent orders. We see

---

[15] The receiver will "[t]ake immediate possession of all non exempt [sic] property . . . of the Defendants, other than those assets that have been identified as exempted from forfeiture . . . belonging to or in the possession, of the Defendants"; the receiver will "[a]ssume control of, liquidate, transfer, and/or be named as an authorized signature for all accounts . . . of any of the Defendants, other than those assets exempted by this Order;" and "[t]itle to all Non-Exempt property . . . of the Defendants and their principals . . . is vested by operation of law in the Receiver with the exception of property specifically exempted by the Order." (emphases added).

16

that the "exempt list" is divided into only two categories: each labeled "as to" one of the wives.[16]  But it is not clear to us that the term "non-exempt assets," as used in the Receivership Order, includes assets of non-defendants at all.

The government stresses the settlement and compromise context of the agreement reached among the persons who signed (or whose lawyer signed) the consent orders.  The government argues that Mrs. Bradley relinquished her interest and claims in all assets not specified in the "exempt list" (including the properties in her present petition).  The government stresses the part of the POF that says she and Maria Bradley "are resolving their claims" by the consent orders.  No doubt some claims were resolved, for example, claims about Bio-Med.  We cannot entirely agree with the government, however, because the POF is unclear about what claims, other than claims about Bio-Med, the wives (Norma and Maria Bradley) actually resolved, if resolved means surrendered.

---

[16] By the way, all of the properties listed in the categories "as to" the wives are not necessarily possessed by or owned by the wives.  For example, one of the properties on the "exempt list" in the "As to Maria Bradley" category is Bradley, III's mother's home in Pennsylvania.

The "resolving their claims" language is in a sentence that confuses us.[17] This quoted language -- following the section "b)" heading, mentioning only Bio-Med -- is in parentheses. The function of that parenthetical -- that is, an aside -- seems to be to relieve the government of its usual duty to provide notice to the wives about forfeited property; but read in the context of both consent orders, this parenthetical does not necessarily put to an end all the wives' ownership rights and possible claims, especially if one claims specific property was and is exclusively her own property.

The context of this sentence and parenthesis in the POF adds to the confusion. The "resolving their claims" language is in a paragraph that looks to be in the section -- section "b)" -- of the POF about Bio-Med; for example, it is not in the earlier marked section -- section "a)" -- that focuses on Mrs. Bradley's

_____

[17] The sentence, which is the first sentence in a paragraph, reads this way:

> The United States shall publish at least once a week for three successive weeks in a newspaper of general circulation, notice of this Order, notice of the Attorney General's intent to dispose of the properties in such manner as the Attorney General may direct and notice to <u>any person, other than the Defendants herein (and Maria and Norma Bradley who are also resolving their claims by this Order and the associated Receivership Order), having or claiming a legal interest in the properties </u>must [sic] file a petition with the Court and serve a copy on the United States Attorney within 30 days of the final publication of notice or receipt of the actual notice, whichever is earlier.

(emphasis added).

18

obligation: the $2 million to come from Mrs. Bradley.  In the previous paragraph, in section "b)" and before the parenthetical, the POF says "the above stated properties are subject to forfeiture."  But the POF never explains what those "above stated properties" are; that paragraph contains the first use of the word "properties" in the POF.  In context, the word "properties" might reasonably refer only to the inventory and accounts receivable and so forth of Bio-Med.  In any event, it is those undefined "properties" only about which the wives may be "resolving their claims" through the consent orders.

It is conceivable to us that the government's interpretation of the "resolving their claims" language could be correct: the particular language, taken out of context, is unqualified.  But the undefined terms and the context of the statement leave us unconvinced that the government's position is unambiguously correct. See W. Grp. Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1360 (11th Cir. 1999) (concluding that a parenthetical phrase was "ambiguous when viewed in the context of the [contract] as a whole").  The ambiguity in the consent orders must be resolved before a court can interpret the consent orders to mean that Mrs. Bradley agreed to resolve (put an end to, really) all of her claims to all of her own property, unless that specific property is set out in the "exempt list" in the Receivership Order.

19

Last, the government points to parts of the consent orders that the government says show "all the parties negotiating the agreement" intended for the consent orders to resolve all claims and to dispose of all assets. The POF was "submitted by all parties in the desire to reach a comprehensive settlement . . . without the need to resort to further legal proceedings." But, we do not know who "all parties" are, as the phrase is used in the consent orders. When the POF talks about "the parties" elsewhere it seems to be referring just to the government and Defendants -- the parties to the criminal prosecution, not to non-defendant signatories like Mrs. Bradley.[18]

The government also highlights a paragraph in the Receivership Order that allows the government to pursue "newly discovered assets," assets that had not been identified in the course of negotiations. The government says that this paragraph establishes an intent for the consent orders to dispose of all assets -- known and unknown. But that paragraph says nothing about whose newly discovered assets the government may pursue. And a paragraph in the POF about property, in addition to the known property, says that the government "may seek

_____

[18] The POF indicates that there are two parties: "The government and the Defendants further stipulate and agree that this Consent Order is not an admission by either party . . . and both parties are free to pursue appellate remedies regarding the trial of the case in chief." And the POF implies that the wives are not a party: "these interests do not impact the judgment amount as the parties have arrived at the judgment along with Maria and Norma Bradley. . . ." (emphasis added).

20

forfeiture of any other property <u>of the Defendants.</u>" (emphasis added). It might well be only Defendants' property that can be pursued. We stress Mrs. Bradley is no Defendant. Besides, Mrs. Bradley alleges (in her verified petition) that she owns the petitioned-for property <u>in her own right</u>.

Though the consent orders show some compromise in which Mrs. Bradley negotiated for the disposition of some assets, the consent orders are ambiguous about the scope of the agreed compromise and about what ownership interests of Mrs. Bradley's own she negotiated away. Mrs. Bradley is not precluded from pursuing in an ancillary proceeding claims that were not within the scope of the consent order. The consent orders in this case are insufficient as a matter of law to preclude further proceedings on whether Mrs. Bradley now owns none, some, or all of the property described in her petition.

IV.

Forfeitures are not favored in the law. Contracts calling for forfeiture must be drafted very carefully to have the forfeiture enforced over an objection to the forfeiture of a property right. For Mrs. Bradley's own property, the consent orders in this case are ambiguous, and all ambiguities must be (and are) resolved against

21

forfeiture.  As a matter of law, the consent orders do not cover the properties set

out in Mrs. Bradley's petition.  The district court erred in dismissing the petition;

we remand the case to the district court to hear Mrs. Bradley's claims.


The Order of dismissal is                    the case is

VACATED AND                REMANDED.

ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 APR -3  PM 12: 56

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| MARTIN J. BRADLEY, III; | ) |
| MARTIN J. BRADLEY, JR.; | ) |
| JOSE A. TRESPALACIOS; | ) |
| EDWIN RIVERA, JR.; | ) |
| ALBERT L. TELLECHEA; | ) |
| MARLENE C. CACERES; | ) |
| STEPHEN B. GETZ; | ) |
| SARA E. GRIFFIN; and | ) |
| BIO-MED PLUS, INC.; | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No. CR405-59

## CONSENT PRELIMINARY ORDER OF FORFEITURE

Defendants Bio-Med Plus, Inc., Martin J. Bradley III, Martin J. Bradley, Jr., without admitting or denying the allegations of the Superseding Indictment for the purpose of this Consent Preliminary Order of Forfeiture, and the United States of America, consent to the entry of this Order.

A jury having found the above defendants guilty as to numerous counts of the above captioned Indictment on March 29, 2006, and the Defendants having been advised that pursuant to Rule 32.2(b)(4) that they have the right to have the jury make a determination regarding forfeiture of assets, all of the above Defendants agree along with the government that the forfeiture aspects of this case should be resolved by consent. This consent order is submitted by all parties in the desire to reach a comprehensive settlement of the forfeiture aspects of the above action which comports with the Eighth Amendment to the United States Constitution and without the need to resort to further legal proceedings. Each Defendant has considered this

## APPENDIX A

agreement with the advice of their counsel, the merits of the claims and defenses to forfeiture and have entered into this agreement knowingly and voluntarily, realizing that this agreement is a compromise and settlement of disputed issues and positions. The government and the Defendants further stipulate and agree that this Consent Order is not an admission by either party to any factual issue in this case and both parties are free to pursue appellate remedies regarding the trial of the case in chief. The parties further stipulate that in the event convictions for underlying offenses are reversed, this agreement will likewise be null and void to the extent that such counts form the basis for forfeiture. Conversely, in the event that the convictions are affirmed, the parties stipulate and agree that this agreement will remain binding and all challenges to forfeiture will be waived by the Defendants. The parties further agree that no Defendant shall seek to stay the execution of this agreement, including the sale and disposition of assets, pending any appeal of their conviction(s). The Court has reviewed the provisions contained within this agreement and the associated Receivership Order and find them acceptable therefore obviating the need for further jury determination of the forfeiture issues in this case.

The Court's jurisdiction is founded upon 18 U.S.C. §§ 982 and 1963.

Judgment is entered in favor of the United States and against each defendant in the following individual amounts (herein, the "Individual Judgments"). It is agreed between the United States and the Defendants that these judgments are individual judgments and will not be joint and several, except as to Martin J. Bradley, Jr., Martin J. Bradley, III and Bio-Med Plus, Inc. The Defendants understand that this judgment is entered pursuant to convictions entered under money laundering, wire fraud and RICO charges in the Indictment under Title 18 United States Code §§ 982 and 1963 which authorize forfeiture. In the event either judgment is

2

affirmed on appeal the judgment amounts will remain intact and will not be rendered null and void.

a)    FORFEITURE JUDGMENTS.

1.    Forfeiture of $39,500,000.00   against Martin J. Bradley, III, Martin J. Bradley, Jr., and Bio-Med Plus, Inc., with the specific understanding that $1,000,000 will be tendered to the Receiver within 10 business days.  It is recognized that this amount is made up of $2,000,000 from Norma Bradley for which the government agrees not to seek any forfeiture against 702 Viewpoint, Savannah, Georgia;

As to the above forfeiture judgment amount, counsel for the government and counsel for the Defendants have conferred on the liquidation of specific assets in order to satisfy the judgment.  The judgment is to be satisfied within one year from the date of this order and the forfeiture judgment will not accumulate interest.  The Receiver shall work with Defendants and other owners in order to establish a liquidation schedule which the Receiver and Monitor shall share with the Court, Counsel for the Defendants and the government.  Once the judgment is satisfied, the government will file a satisfaction of judgment and liquidation will cease as to that Defendants. Nothing in this order purports to affect the government's statutory right to enforce collection of any monetary imposition that may be ordered at Defendants' sentencing.  It is understood however that any amount tendered and forfeited shall be credited to the defendants as restitution.

3

## b) FORFEITURE OF BIO-MED PLUS, INC.

**Bio-Med Plus, Inc.** shall either be liquidated or sold within six (6) months of this Order with the specific agreement that this provision will be modified as needed based upon the financial condition of the company six months after this Order and shall remain under the jurisdiction of this Court until further order. The government and counsel for the Defendants specifically agree that upon payment of the total forfeiture amount due from the Martin J. Bradley, Jr. Martin J. Bradley, III and Bio-Med Plus Inc., above, that any claim by the United States shall be removed from Bio-Med Plus, Inc.. For purposes of this agreement only, the government recognizes the claims of Maria Bradley and Norma Bradley in Bio-Med Plus, Inc. However, these interests do not impact the judgment amount as the parties have arrived at the judgment along with Maria and Norma Bradley as a compromise of their competing interests. Additionally, the parties specifically agree that in calculating the amount to be forfeited the parties have calculated the present value of accounts receivables for Bio-Med Plus at $8,500,000. To the extent that the company is liquidated and the actual amount received for accounts receivable is in excess of $8,500,000, the parties shall divide the proceeds at 2/3 to the United States in additional forfeiture and 1/3 to Maria and Norma Bradley. If the company is not liquidated such calculation will be based upon the inventory of the receivables as of the date of this Order.

With regard to product inventory, the parties have calculated the present value at $5,000,000. As with account receivables, to the extent the company is liquidated and the actual amount received for inventory exceeds $5,000,000 the parties shall divide the proceeds 2/3 to the United States for an additional forfeiture and 1/3 to Maria and Norma Bradley. Also, to the extent the excess amounts received for account receivables and inventory are necessary to the

4

operation of Bio-Med Plus, the Receiver may utilize the funds for a reasonable period of time after consultation with the representatives of Madison Associates, the United States Attorneys Office and counsel for Bio-Med Plus. Any unresolved disputes shall be resolved by the Court. Based on the allegations set forth in the Indictment and the evidence adduced at trial, the United States has established the requisite nexus between the properties and the offenses to which the Defendants have been found guilty. Accordingly, the above stated properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 982 and 1963.

The United States shall publish at least once a week for three successive weeks in a newspaper of general circulation, notice of this Order, notice of the Attorney General's intent to dispose of the properties in such manner as the Attorney General may direct and notice to any person, other than the Defendants herein (and Maria and Norma Bradley who are also resolving their claims by this Order and the associated Receivership Order), having or claiming a legal interest in the properties must file a petition with the Court and serve a copy on the United States Attorney within 30 days of the final publication of notice or receipt of the actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the properties, shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in one or more of the properties that is the subject of the Preliminary Order of Forfeiture, as a substitute for published notice as to those persons so notified.

In accordance with the provisions of 18 U.S.C. §§ 982 and 1963, and Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United States is hereby authorized to undertake

whatever discovery is necessary to identify, locate, or dispose of property subject to forfeiture, or substitute assets for such property and to conduct any discovery necessary to determine the validity of any ancillary claims which may be filed. Further, the United States is authorized, in concert with or independently of the Receiver, to use any collection or enforcement remedy under either Federal or State law to collect any outstanding receivables or other debts due to Bio-Med Plus, Inc. or any Defendant herein.

Pursuant to 18 U.S.C. § 1963(m), each Defendant shall forfeit substitute property, up to the value of the amount of the above-described properties if, by any act or omission of the Defendant, the above-described properties, or any portion thereof, the properties cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intention of the parties that the United States may seek forfeiture of any other property of the Defendants, pursuant to 18 U.S.C. § 1963(m), up to the value of the forfeitable property.

6

## RETENTION OF JURISDICTION

**IT IS HEREBY FURTHER ORDERED** that this Court shall retain jurisdiction over this matter and the Defendants in order to implement and carry out the terms of all Orders and Decrees that may be entered and/or to entertain any suitable application or motion for other relief that the parties deem appropriate under the circumstances.

DONE AND ORDERED in Chambers, at Savannah, Georgia, this **3** day of ~~March~~, *APRIL* 2006.

_____
B. AVANT EDENFIELD
UNITED STATES DISTRICT JUDGE

Agreed to by:

_____
Martin J. Bradley, III

_____
Roy Black, Attorney for Martin J. Bradley III express permission

_____
Martin J. Bradley Jr.

_____
Alex L. Zipperer, III, Attorney for Martin J. Bradley, Jr.

_____
Arthur W. Leach for Bio-Med Plus

_____
Maria Carmen Bradley

_____
Norma Bradley

_____
James L. Coursey Jr.
Assistant United States Attorney

7

ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 APR -3 PM 12: 57

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

THE UNITED STATES OF AMERICA          )
                                      )
            v.                        )
                                      )
MARTIN J. BRADLEY, III;               )        Case No. CR405-59
MARTIN J. BRADLEY, JR.;               )
JOSE A. TRESPALACIOS;                 )
EDWIN RIVERA, JR.;                    )
ALBERT L. TELLECHEA;                  )
MARLENE C. CACERES;                   )
STEPHEN B. GETZ;                      )
SARA E. GRIFFIN; and                  )
BIO-MED PLUS, INC.;                   )
                                      )
            Defendants.               )
                                      )

## ORDER APPOINTING RECEIVER AND MONITOR

The parties have reached agreement regarding forfeiture of certain portions of Bio-Med Plus Inc., to include the appointment of a Monitor and Receiver and for other relief as set out herein. The Defendants Bio-Med Plus, Inc. ("Bio-Med"), Martin J. Bradley III ("Bradley III"), and Martin J. Bradley, Jr., ("Bradley, Jr."), (collectively, "Defendants"), and the United States of America, consent to the entry of the following Order which will address:

1)    Appointment of a Monitor;

2)    Appointment of A Receiver;

3)    Repatriation of the Defendants' Assets;

4)    Requiring Sworn Defendants' Accountings;

5)    Prohibiting Destruction of Documents; and

6)    Expedited Discovery.

## APPENDIX B

reimbursement shall be made from the assets now held by or in the possession or control of or which may be received by the Defendants.

## II.

## APPOINTMENT OF A RECEIVER

The parties have consented to the appointment of a Receiver over the Defendants, with full and exclusive power, duty and authority to: administer and manage the business affairs, funds, assets, choses in action and any other property of the Defendants; marshal and safeguard all of the Defendants' assets other than those identified as exempt in this Order (collectively, "the Non-Exempt Assets"); and take whatever actions are necessary for the liquidation of such Non-Exempt Assets in satisfaction of judgments as ordered by this Court.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Marta Alfonso, CPA, Partner, Rachlin, Cohen & Holtz, LLP, One S.E. Third Avenue, 10th Floor, Miami, Florida, 33131, (305) 377-4228, is hereby appointed as the Receiver. Arthur W. Leach, who is counsel for Bio-Med Plus shall continue in that capacity and as liaison between the Court, the United States Attorney and the Receiver.

Subject to the terms and controls and conditions described in Section I above, (the Appointment of the Monitor), the Receiver is hereby authorized, empowered, and directed to:

1.    Take immediate possession of all non exempt property, assets, and estates of every kind of the Defendants, other than those assets that have been identified as exempted from forfeiture under this Order, whatsoever and wheresoever located, belonging to or in the possession, of the Defendants, including, but not limited to, all rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mutual funds, brokerage accounts,

4

Defendants, and exercising the power granted by this Order, subject to approval by this Court either prior to the expenditure if such costs are anticipated or predicable or at the time the Receiver accounts to the Court for such expenditures and compensation;

5.    Engage persons at the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, a private security firm;

6.    Defend, compromise or settle legal actions, including the instant proceeding, in which any or all of the Defendants or the Receiver are a party, commenced either prior to or subsequent to this Order, with authorization from this Court; except, however, in actions where any or all of the Defendants are a nominal party, as in certain foreclosure actions where the action does not affect a claim against or adversely affect the assets of any of the Defendants, the Receiver may file appropriate pleadings in the Receiver's discretion. The Receiver may waive any attorney-client privilege held by the corporate Defendant or corporations in the Receivership estate; however, attorney-client privileges held by the individual Defendants shall not be waived under this Order and will be referred to the individual Defendants criminal counsel for resolution;

7.    Assume control of, liquidate, transfer, and/or be named as an authorized signature for all accounts at any bank, brokerage firm or financial institution which has possession, custody, or control of any assets or funds, wherever situated, of any of the Defendants, other than those assets exempted by this Order, and upon order of this Court, of any of their subsidiaries or affiliates; provided that the Receiver deems it necessary;

8.    Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence

6

16.    The Receiver is fully authorized to proceed with any filings the Receiver may deem appropriate under the Bankruptcy Code as to the Defendants;

17.    Title to all Non-Exempt property, real or personal, all contracts, rights of action and all books and records of the Defendants and their principals, wherever located within or without this state, is vested by operation of law in the Receiver with the exception of property specifically exempted by the Order or until further order of this Court;

18.    Upon request by the Receiver, any company providing telephone services to the Defendants shall provide a reference of calls from the number presently assigned to the Defendants to any such number designated by the Receiver or perform any other changes necessary to the conduct of the Receivership;

19.    Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

20.    The United States Postal Service is directed to provide any information requested by the Receiver regarding the Defendants; and to handle future deliveries of the Defendants' mail as directed by the Receiver;

21.    No bank, savings and loan association, brokerage firm, or other financial institution or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any Non-Exempt funds or Non-Exempt Assets to the Receiver's control without the permission of this Court;

22.    No bonds shall be required in connection with the appointment of the Monitor and Receiver. Except for acts of gross negligence or malfeasance, the Monitor and Receiver shall not be liable for any loss or damage incurred by the Defendants or by the Monitor's or

9

Receiver's officers, agents, or employees or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Monitor's and Receiver's duties and responsibilities;

23.    Service of this Order shall be sufficient if made upon the Defendants and their principals by facsimile, email or overnight courier; and

24.    In the event that the Receiver discovers that Defendants' funds have been transferred to other persons or entities, the Receiver shall apply to this Court for an order giving the Receiver the possession of such funds, and if the Receiver deems it advisable, extending this receivership over any person or entity holding such funds.  Any issues related to such property shall be resolved by this Court.

## III.

## ASSET FREEZE

**IT IS HEREBY FURTHER ORDERED** that:

A.    The Defendants, their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, who receives notice of this Order by personal service, mail, facsimile, email or otherwise, except any Receiver that may be appointed by this Court, be and hereby are, restrained from, directly or indirectly, transferring, setting off, receiving, changing, selling, pledging, liquidating, or otherwise disposing of, or withdrawing any Non-Exempt Asset or property without notice and consent of the Receiver and the government, including the building located at 5000 S.W. 75th Avenue, Miami, FL, 33155, and further including, but not limited to, cash, free credit balances, fully paid for securities, and/or property pledged or hypothecated as

10

collateral for loans, or charging upon or drawing from any lines of credit, owned by, controlled by or in the possession of the Defendants; and

B.     That any financial or brokerage institution or other person or entity located within the jurisdiction of the United States courts and holding any such Non-Exempt funds or other Non-Exempt Assets, in the name for the benefit or under the control of the Defendants, directly or indirectly, held jointly or singly, and which receives actual notice of this Order by personal service, facsimile or otherwise, shall hold and retain within its control and prohibit the withdrawal, removal, transfer, disposition, pledge, encumbrance, assignment, set off, sale, liquidation, dissipation, concealment, or other disposal of any such Non-Exempt funds or other assets.

## IV

### Exempt Assets

**IT IS HEREBY FURTHER ORDERED** that the following assets are regarded as EXEMPT assets and not subject to forfeiture, transfer to, or seizure by the Receiver without further order of the Court:

### As to Maria Bradley:

1)     Current Residence, 3202 Alhambra Circle, Coral Gables, Florida, 33134, to include all contents and furnishings ($1,575,000), jewelry ($220,000), and personal property;

2)     2003 Blue Navigator Sports Utility Vehicle ($20,000);

3)     1975 Blue Volkswagen Bug ($0);

4)     1961 Corvette that is currently in pieces and which requires maintenance to place the car in service;

11

5) Account Number 012212301907197 at Wachovia Bank that consists of a $152,446.57 Certificate of Deposit in the name of Maria Carmen Bradley and Brittany Bradley;

6) Account Number 1010109187583 at Wachovia Bank that contains $922,000 in the name of Maria Carmen Bradley;

7) Cash of $50,000;

8) Martin J. Bradley, III mother's home in Pennsylvania: $80,000;

9) Florida Prepaid College Account for Brittany Marie Bradley ($10,000); and

10) Miscellaneous personal items located in Key West home, Crested Butte home, and in offices of Marie Carmen Bradley and Martin J. Bradley, III at Bio-Med Plus.

11) Miscellaneous mortgages: trailer slip-R. Johns mortgage on Les Johnson's home; David Portal's warehouse; David Portal's house; Tiffany Ruskin's house; Gary Kindle loan; Manny Mesa loan; Veronica Armenteros loan; Ernie DeAngeles loan; .

## As to Norma Bradley

1) Following Checking and Money Market Accounts:

a. Darby Bank: Checking Account ($30,000) and Money Market Account ($60,000);

b. Regions Bank: Money Market Account ($65,000);

c. Wachovia Bank: Money Market Account ($1,390); and

d. SunTrust Bank: Money Market Account ($69,000).

2) Martin & Norma Charitable Trust: $800,000.

3) Mortgages Receivable:

a. Deborah Strickland (702 Viewpoint, Savannah): $1,465,000;

b. Barbara Treadwell: Gaston Street Home: $1,000,000;

c. Melissa Brown: Number 4 E. 60 Street: $162,000;

12

    d.  Eddie Barnes Home: $72,000;

    e.  Susan McBride Home: $85,000;

    f.  Bill Trout – Income: Park Avenue, Savannah: $500,000; and

    g.  Jones on Coffee Bluff: $135,000.

4) Real Estate Investments, including personal contents, furnishings, and personal items pertaining to Norma and Martin J. Bradley, Jr.:

    a.  616 Herb River Drive, Savannah, GA: $2,000,000;

    b.  1417 Second Avenue, Tybee, Savannah, GA: $1,500,000;

    c.  246 Fortunes Ridge (Cabin), Wintergreen, VA: $550,000;

    d.  Beach Grove Road, Wintergreen, VA: $30,000;

    e.  Food Bank House (held jointly): $50,000;

    f.  House for Rehab (held jointly): $60,000;

    g.  Educational Trust: $120,000;

    h.  Mac-Bailey Company formed in 2006, with total equity of $335,000;

    i.  Brad-Lee Company, with total equity of $300,000; and

    j.  Women's Mission's Warehouse: $225,000.

5) Automobiles in Norma Bradley's name:

    a.  2004 Lexus: $35,000.

    b.  2001 Navigator: $10,000.

    c.  2006 Kia: $19,000.

To the extent that assets are discovered or identified which have not been identified to the government in the course negotiations related to this order, the government is free to pursue at its discretion those newly discovered assets in addition to the $39,500,000 judgment entered in the Preliminary Order of Forfeiture.

Decrees that may be entered into and/or to entertain any suitable application or motion for other relief that the parties deem appropriate under the circumstances. The Clerk is directed to permit the receiver to file her reports and any motion under the above case number.

**DONE AND ORDERED** in Chambers in Savannah, Georgia, this ___3___ day of APRIL ~~March~~, 2006.

B. AVANT EDENFIELD
UNITED STATES DISTRICT JUDGE

Agreed to by:

_____
Martin J. Bradley, III

_____
Roy Black, Attorney for Martin J. Bradley III with express permission

_____
Martin J. Bradley, Jr.

_____
Alex L. Zipperer, III, Attorney for Martin J. Bradley, Jr.

_____
Arthur W. Leach for Bio-Med Plus

_____
Maria Carmen Bradley

_____
Norma Bradley

_____
James L. Coursey Jr.
Assistant United States Attorney