TARANTO, Circuit Judge,
dissenting in - part.
I join the majority’s determination that the Commission committed no reversible error in entering its order imposing penalties on DeLorme for violation of the patent-infringement-based Consent Order. *1337 Nevertheless, I dissent from the affir-mance of the penalty order. After the penalty order was entered, indeed after DeLorme filed its opening brief in this appeal challenging the order, a district court held the relevant patent claims to be invalid, and today we affirm that invalidation in No. 20151169. The Commission has not had an opportunity to consider the effect of the invalidation. I would remand this matter to the Commission for it to consider the effect of the invalidation on enforcement of the civil penalty for pre-invalidation violations of the Consent Order.
The Commission has specifically argued to us that such a remand is “necessary”; it has not argued or conceded that we may decide for ourselves whether the penalty should stand. ITC Supp. Br. 3, 8. To decide the issue ourselves at this stage, I believe, we would have to conclude that the answer is clear as a matter of law — in particular, that (a) no possible factual findings or statutory or regulatory interpretations within the Commission’s authority could affect the answer and (b) all material considerations have been fully explored in briefing here. I am not prepared to draw those conclusions. I do not currently think that the answer is clear, and I believe that potentially material considerations have not been fully developed, having been addressed only in abbreviated letter briefs from the parties requested by this court shortly before the oral argument.
Preliminarily, I note that I do not believe it matters that the appeal in No. 2015-1169 might be reheard by this court or that our judgment in that appeal might be the subject of discretionary certiorari review in the Supreme Court. Those possibilities are slim, but even if they mean that the district court’s judgment of invalidation is not currently “final and non-reviewable” under paragraph 4 of the Consent Order, J.A. 1508, the present case is subject to the same possibilities of further review on the same timetables. The invalidation of the patent is highly likely to. become final and non-reviewable at such later stages of this case or on a remand to the Commission. That is reason enough for a remand to the Commission, which can take appropriate action on the remand if the invalidation is set aside on further review in No. 2015-1169.
A
I begin with the language of the Consent Order, J.A. address what legal effect that language would have if it were unambiguous. That language clearly contemplates that DeLorme could obtain a (final and non-reviewable) judgment of invalidity in district court. But I do not think that the language is unambiguous on the question before us concerning the effect of such a judgment regarding earlier conduct. I find ambiguity for several reasons.
Two features of the language of paragraph 1 offer support for the conclusion that the penalty for pre-invalidation conduct is meant to be enforceable under the Consent Order even after invalidation. One feature is the word “until.” The other is the listing of “expiration” alongside “invalidation” and “unenforceability”: a penalty for pre-expiration infringing conduct almost certainly remains enforceable after expiration.
Nevertheless, I do not think that the language does more than point in one direction; it does not unambiguously establish the answer. The “until” language does not imply a solely prospective effect of the event once- it comes to pass. Linguistically, it allows the effect also to be retrospective, i.e., to govern (non-final, still reviewable) determinations about earlier conduct. Cf. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 124-25, 127 S.Ct. *1338 764, 166 L.Ed.2d 604 (2007) (noting that, under Lear, Inc. v. Adkins, 395 U.S. 653, 673, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), even when a patent license provided that a licensee was to pay royalties “until” a final judgment of invalidation, patent law precluded enforcement of that contractual commitment against a “repudiating” licensee).
The inclusion of “expiration” alongside “invalidation” and “unenforceability” likewise does not resolve the interpretive issue. “Expiration” has an intrinsically different meaning from “invalidation” and “unenforceability.” The former intrinsically indicates nothing to undermine the legal force of the patent-compliance obligation before the event, whereas the latter two terms do precisely that — they imply that the legal obligation of patent compliance was defective from day one. Serial enumeration of terms with different intrinsic temporal meanings does not imply that all have the same temporal meaning.
Further, there is an obvious absence of parallelism of the “expiration,” “invalidation,” and “unenforceability” terms. The first two terms refer to events; the third refers to a condition, not an event — specifically, not a judicial-pronouncement event. Moreover, with the third term of the series naming a condition that existed from the time of the patent’s issuance, its inclusion in the series raises the question whether the second term in the series might also have been meant to refer to a similar condition present from issuance, ie., invalidity. If the inclusion of “expiration” points in one direction for interpreting the effect of “invalidation,” the inclusion of “unenforceability” points the other way.
I find significant not only the language that the Consent Order uses, but also the language it does not use. Neither in paragraph 1 nor in paragraph 4 does the Consent Order use language that is readily available and widely used in the realm of licensing in order to be clear about the compliance obligation’s coverage of pre-invalidation conduct. An example: “with respect to acts occurring thereafter.” Brian G. Brunsvold et al., Drafting Patent License Agreements 474 (6th ed.2008).[1] The best reading of language used is often influenced by how it contrasts with language not used. See, e.g., Roberts v. Sear-Land Servs., Inc., - U.S. -, 132 S.Ct. 1350, 1357 n. 5, 182 L.Ed.2d 341 (2012); New Process Steel, L.P. v. NLRB, 560 U.S. 674, 681-82, 130 S.Ct. 2635, 177 L.Ed.2d 162 (2010); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 n. 4, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). That interpretive principle seems especially weighty where clarity is important, as it is with obligations enforced by penalties, since the choice not to use familiar language for imposing a particular obligation can often reasonably be understood to imply that that obligation is not being imposed.
It is a standard principle of contract interpretation that, where possible, provisions should be read in a way that harmon *1339 izes them. See Mastrobuono v. Skearson Lehman Hutton, Inc., 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); Banknote Corp. of America, Inc. v. United States, 365 F.3d 1345, 1353 (Fed.Cir.2004). Under that principle, paragraph 1 should be treated as a shorthand invocation of the same rule stated in paragraph 4 of the Consent Order. As a common-sense matter, it would be odd if the two paragraphs of the Consent Order stated two different rules on the same topic. And that is so even putting aside the regulatory background, described below, which suggests that paragraph 4 may be the primary Consent Order provision on the topic.
But paragraph 4 is itself unclear about the effect on pre-invalidation conduct of a final judicial determination that the claims were, from the beginning, invalid. Paragraph 4 does not use the “until” language that is present in paragraph 1, suggesting that “until” not be given great weight. And the language paragraph 4 does use is unclear on the point at issue.
As relevant here, paragraph 4 says that “[t]he Consent Order shall not apply with respect to any [patent] claim ... that has ... been found or adjudicated invalid ... by ... a court[,] ... provided that such finding or judgment has become final and non-reviewable.” J.A. 1508. The “shall” in that language is at least as likely an imperative as it is a future-tense word. Given the natural imperative meaning, the language can easily be understood to mean that prohibitions within the Consent Order do not apply, and cannot be treated as applying in making any determination requiring that they apply, to any claim that has been adjudicated to be invalid, once the invalidity adjudication is final and non-reviewable. The language itself does not command a (prospective-only) effect limited to post-invalidation conduct regarding such a claim.
For those reasons, I think at present that the answer to the question before us cannot be determined without looking outside the four corners of the Consent Order.
B
I do not feel adequately informed about a number of non-textual issues that could be material and might involve Commission interpretive, fact-finding, or other discretion. Such matters might affect the best interpretation of the Consent Order or might lead to a result justified independently of what is found to be the best interpretation.
We have not had a full exploration of how the Commission has treated such issues in the past. Nor have we been shown how similar Consent Orders have been' interpreted elsewhere, whether in agency or judicial settings. Such practices could be significant background for determining how best to interpret the Consent Order here.
The interpretation and application of a Consent Order generally follow principles of contract law. E.g., uPI Semiconductor Corp. v. Int'l Trade Comm’n, 767 F.3d 1372, 1377 (Fed.Cir.2014). Contract interpretation is a matter of law as long as the court can conclude that the contract is unambiguous on the point at issue, but if ambiguity exists, the question in many contract settings can become a factual one, or involve factual components, whether about the parties’ subjective intent or about a usage, practice, or method in the field. See Teva Pharm. USA, Inc. v. San-doz, Inc., — U.S. -, 135 S.Ct. 831, 837-38, — L.Ed.2d - (2015) (discussing Williston); Restatement (Second) of Contracts § 212(2) (1981); Farnsworth on Contracts § 7.14 at 336-37 (3d ed.2004); Warner, All Mixed Up About Contract: When Is Contract Interpretation a Legal *1340 Question and When Is It a Fact Question, 5 Va. L. & Bus. Rev. 81 (2010). I cannot at present exclude the possibility that Commission findings of fact could matter here.
Moreover, an enforceable consent order, even a judicial consent decree, is not always to be treated under the same principles that govern an ordinary contract. See Foster v. Hallco Mfg. Co., Inc., 947 F.2d 469 (Fed.Cir.1991) (holding that the Lear v. Adkins ruling, which overrides certain contractual promises, does not override the claim-preclusive effect of .a consent decree). Perhaps, in the present setting, there is reason not to find a contractual approach controlling. For now I focus on one such possible reason: the Consent Order is an order backed by (non-compensatory) penalties.
The First Circuit has written: “Consent decrees have to be specific and any ambiguities or omissions in the decree are construed against the person alleging a violation of the consent decree and invoking the contempt sanction.” Porrata v. Gonzalez-Rivera, 958 F.2d 6, 8 (1st Cir.1992); see FTC v. Kuykendall, 371 F.3d 745, 760-61 (10th Cir.2004). In this court’s decision in TiVo Inc. v. EchoStar Corp., 646 F.3d 869 (Fed.Cir.2011) (en banc), the five-judge dissent cited Porrata for the proposition that an order must be “clear and unambiguous” to be enforced in contempt, 646 F.3d at 899 n. 7, and the majority did not disagree in principle, instead concluding that the dissent’s point was not “persuasive on the facts before us,” id. at 887-88. Under such principles, ambiguity in the Consent Order in the present case — regarding the effect of invalidation once invalidation becomes final — might be enough to bar enforcement. That principle seems particularly weighty where, as here, it appears to be easy for a Consent Order to be clear on the point at issue, as discussed above.
For penalties for a Consent Order violation, the anti-ambiguity principle might trump any conclusion to be drawn from the contra proferentem principle of contract interpretation — favoring construction against the drafter. See Mastrobuono, 514 U.S. at 62-63, 115 S.Ct. 1212. Even that principle, however, is not of clear-cut application here on its own terms. On one hand, it appears that DeLorme initially drafted the Consent Order. On the other hand, DeLorme did so against a strong regulatory background that might be viewed as effectively having controlled what the Consent Order should say. The former point suggests construction against DeLorme, the latter suggests the opposite to the extent that the Commission’s regulations effectively made the Commission the drafter.
The regulatory background is significant for that reason and independently as an interpretive tool.[2] The Consent Order was issued on April 5, 2013, J.A. 1507-09, *1341 based on a “consent order stipulation” submitted by DeLorme in early March 2013, J.A. 1495-97. At that time, the governing regulation specified what the “consent order stipulation shall” contain, including a statement that the Consent Order “shall not apply with respect to any claim ... that has expired or been found or adjudicated invalid or unenforceable,” “provided that such finding or judgment has become final and nonreviewable.” 19 C.F.R. § 210.21(c)(3)(i)(B)(1) (2012) (emphasis added), currently codified at id. § 210.21(c)(3)(ii)(A). The required language appears in paragraph 6 of the March 2013 Consent Order Stipulation in this case. J.A. 1497. DeLorme also included it in paragraph 4 of the proposed Consent Order. J.A. 1508.
DeLorme included the language in the proposed Consent Order even though, when the Consent Order in this case was proposed (and adopted), the Commission’s regulations did not specify what a consent order itself must say. But it is evident that this language originated from the language in the Commission’s requirement for what the required stipulation must say. Moreover, at the time of the proposal and adoption of the Consent Order, the Commission had already proposed regulations to add just such a requirement for the content of consent orders, mirroring the pre-existing requirement for consent-order stipulations. 77 Fed.Reg. 41,120, 41,123, 41,128-29 (July 12, 2012). On April 19, 2013, two weeks after the Consent Order in this case was issued, the Commission adopted its regulatory proposal, making it effective May 20, 2013. The adopted language, now in 19 C.F.R. § 210.21(c)(4)(x), requires a Consent Order to state that if a patent claim “is held invalid,” “the Consent Order shall become null and void as to such invalid ... claim.” See 78 Fed.Reg. 23,474, 23,477, 23,483 (Apr. 19, 2013). This effectively puts the pre-existing requirement for a consent order stipulation into a new list of requirements for the associated consent order. And the new regulation (like the proposal) says: “The Commission will not enforce consent order terms beyond those provided for in this section.” 19 C.F.R. § 210.21(c)(5); 77 Fed.Reg. at 41,129 (proposed rule).
I am not prepared to draw conclusions at this point about the significance of this regulatory background. Perhaps the regulatory amendments adopted on April 19, 2013 (to- take effect one month later) should be read to confirm, by making express, a pre-existing understanding that the requirements for a consent-order stipulation effectively controlled the consent order itself. Perhaps for that reason the Consent Order here should or must be read to go no further than the pre-May 2013 prescription for consent-order stipulations. I would benefit from the Commission’s analysis of such matters. And the public might benefit if, in the course of considering them, the Commission decided to clarify its regulations to avoid recurrence of the problem presented here.
The statutory provisions under which the Consent Order was issued and is being enforced, 19 U.S.C. § 1337(f), may also be significant here. In San Huan New Materials High Tech, Inc. v. International Trade Commission, 161 F.3d 1347 (Fed.Cir.1998), this court affirmed the Commission’s ruling that a consent order was to be enforced like an involuntary order, through penalties under § 1337(f)(2). But § 1337(f)(2) may be confined within the limits stated in § 1337(f)(1), which, by its language, may reach no further than conduct that constitutes a violation of § 1337(a), which, in turn, for a patent-based proceeding like this one, requires that the respondent “infringe a valid ” patent, § 1337(a)(1)(B)(i) (emphasis added). In that way or others, the statute governing this matter may limit how the Consent *1342 Order can be enforced once there is a final judgment of invalidity. I would benefit from more focused development of this issue than we have had, especially because the issue might be one on which the Commission will ultimately be owed deference.
Finally, it seems relevant to consider how the penalty order for violating the Consent Order compares to contempt orders issued by federal courts for violating orders (even consensual orders) against patent infringement and, specifically, how such contempt orders are treated once the patent is adjudicated (always to have been) invalid. How contempt orders are treated depends on the finality of the underlying infringement-barring order and the character of the contempt — in particular, whether the contempt is criminal or civil. See ePlus, Inc. v. Lawson Software, Inc., 789 F.3d 1349, 1356-58, reh’g denied, 790 F.3d 1307 (Fed.Cir.2015). If we ask the question. whether the Commission’s civil penalty here is more like civil or criminal contempt in the federal courts, we find at least some reason to view it as more like criminal contempt, because there is nothing either compensatory or specifically coercive (pay until you comply) about it. But even as to that, I would benefit from the Commission’s own full consideration of its statutory and regulatory regime.
For the foregoing reasons, I would not affirm the penalty order before us, but remand for the Commission to consider the effect of the invalidation of the underlying patent claims.

. Other examples of available language that is clearer than the Consent Order: "will not, however, be relieved from paying any royalties that accrued before the final decision,” Corporate Counsel’s Guide to Licensing § 36:2 (2015); "shall not relieve either party of its obligations and liabilities accruing up to the time of termination,” 3 Eckstrom’s Licensing in Foreign and Domestic Operations: The Forms and Substance of Licensing § 5:35 (2015); "shall not have a damage claim for refund or reimbursement ... for past royalty payments,” Icon Health & Fitness, Inc. v. Park City Entm’t, Inc., No. 1:10-CV-195-RJS, 2013 WL 4027504, at *1 (D.Utah Aug. 7, 2013); "shall pay to [patentee] a royalty of Three Percent (3%) of the Net Sales of all Licensed Products sold ... until the last date on which there is a Valid Claim,” then defining "Valid Claim,” MedImmune, LLC v. PDL BioPharma, Inc., No. C 08-5590 JF HRL, 2011 WL 61191, at *21 (N.D.Cal. Jan. 7, 2011).

. See, e.g., United States v. ITT Continental Baking Co., 420 U.S. 223, 240, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975) (relying on the antitrust statutes to interpret terms in the consent order); United States v. Bradley, 484 Fed.Appx. 368, 374 (11th Cir.2012) (rejecting interpretation of consent order that would require forfeiture given background principles that disfavor forfeiture); Doe v. Briley, 511 F.Supp.2d 904, 918 (M.D.Tenn.2007), aff'd, 562 F.3d 777 (6th Cir.2009) (using a change in the city code to interpret a consent order); Henderson v. Morrone, 214 Fed.Appx. 209, 213 (3d Cir.2007) (construing consent order in light of differences between terms of the consent order and later-adopted regulations); United States v. Saccoccia, 433 F.3d 19, 29 (1st Cir.2005) (finding ambiguity in consent order based on background forfeiture laws); McDowell v. Phila. Hous. Auth., 423 F.3d 233, 239-40 (3d Cir.2005) (interpreting consent order in light of housing regulations); United States v. Charter Int’l Oil Co., 83 F.3d 510, 517-18 (1st Cir.1996) (defining scope of consent order by looking to background law).