NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GATEARM TECHNOLOGIES, INC.,**
*Plaintiff-Appellant*

**v.**

**ACCESS MASTERS, LLC, BLACKSKY TECHNOLOGIES, INC., GATEARMS.COM, LLC,**
*Defendants-Appellees*

---

2020-2313

---

Appeal from the United States District Court for the Southern District of Florida in No. 0:14-cv-62697-RNS, Judge Robert N. Scola, Jr.

---

Decided:  June 30, 2021

---

ANDREW D. LOCKTON, McHale & Slavin, P.A., Palm Beach Gardens, FL, argued for plaintiff-appellant.  Also represented by EDWARD F. MCHALE.

JEROLD I. SCHNEIDER, Schneider IP Law, Boynton Beach, FL, argued for defendants-appellees.  Also represented by SPENSYR ANN KREBSBACH, LORRI LOMNITZER, The Lomnitzer Law Firm, P.A., Boca Raton, FL.

---

Before NEWMAN, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

GateArm Technologies, Inc. (GateArm) owns U.S. Patent Nos. 8,845,125 and 9,157,200, both titled "Vehicle Barrier System with Illuminating Gate Arm and Method." In 2014, GateArm sued Access Masters LLC, Blacksky Technologies, Inc., and Gatearms.com, LLC (collectively, Access Masters) for infringing the '125 and '200 patents. In 2016, the parties settled the dispute, and the district court entered a consent decree based on a signed Settlement Agreement. *See* Order, *GateArm Techs., Inc. v. Access Masters LLC*, No. 0:14-cv-62697 (S.D. Fla. Mar. 29, 2016), ECF No. 53 (*Consent Decree*); J.A. 1634–36. Later that year, after Access Masters introduced a modified product, GateArm moved to reopen the case to obtain a finding that Access Masters was in contempt of the consent decree for marketing and selling the new product and to order such activities to cease. The magistrate judge to whom the matter was assigned recommended that GateArm's motion for contempt be denied, and the district court adopted the recommendation. *See Gatearm Techs., Inc. v. Access Masters, LLC*, No. 0:14-cv-62697, 2020 WL 4923637, at *1 (S.D. Fla. Aug. 21, 2020) (*District Court Order*). We affirm.

I

A

The '200 patent issued from an application that was a continuation of the application that issued as the '125 patent, so the two patents share a specification, and both claim priority to a provisional application filed on June 1, 2012. Both patents involve a "gate arm" of the sort that may be found at an entry-restricted parking lot or housing complex. To aid drivers in seeing the arm, a light strip is placed in a channel inset into the arm. The light strip is held in place by what the parties have called "fins" (or

"lips") that extend, from the corners where the channel walls meet the arm surface, into the channel opening through which the light shines. *See* '125 patent, figs. 6–9; '200 patent, figs. 6–9.

In an ex parte reexamination, which resulted in a certificate issued on September 9, 2015, most claims of the '125 patent were modified. The '200 patent issued on October 13, 2015, containing language closely related to the modified claim language of the '125 patent adopted during reexamination.

The '125 patent's independent claim 1 now recites:

1. A vehicle barrier system comprising:

a gate arm formed from a single piece of material having a top convex member and a bottom convex member defining first and second opposing side surfaces, a distal end and a proximal end defining a longitudinal axis therebetween, said proximal end coupled to a housing having a control system and power supply to selectively pivot said gate arm between a horizontal position and a vertical position, said gate arm including at least a first elongated inset channel centrally disposed in said first side surface defined by said top convex member and said bottom convex member and formed along said longitudinal axis of said gate arm, said first elongated inset channel having a first opening formed by a first pair of inset channel sidewalls integrally joined to a first inset channel backwall, *said first side surface having a first upper sidewall including a terminating end and a first lower sidewall including a terminating end which ends terminate partially within said first opening and spaced from each other*;

at least a first, removable light strip formed from a plurality of light emitting diodes each electrically

connected in parallel and physically disposed adjacent one another in series, and encased within a protective member, said first light strip cradled entirely within said first elongated inset channel between said backwall and said inset channel sidewalls and retained therein solely by said terminating ends of said upper and lower sidewalls;

a first electrical cable connected to said plurality of light emitting diodes; and

an electronic connector electrically releas[]ably connected to said housing power supply and said first electrical cable;

wherein said first light strip is remov[]ably retained within said first elongated inset channel with said plurality of light emitting diodes aligned towards said first opening such that light from said plurality of light emitting diodes enumerates through said first opening between the terminating ends when said plurality of diodes are powered from said power supply.

'125 patent (Reexamination Cert.), col. 1, lines 21–63 (emphasis added).

The '200 patent's independent claim 1 is closely related but, as relevant here, claims the fins (at the surface-channel corners) as terminating ends of the channel sidewalls, not as terminating ends of the arm-surface sidewalls:

1. A vehicle barrier system comprising:

a gate arm formed from a single piece of material that is generally circular shaped having a distal end and a proximal end defining a longitudinal axis therebetween, said proximal end coupled to a housing having a control system and a power supply to selectively pivot said gate arm between a horizontal position and a vertical position, said ***gate arm***

*including a first elongated inset channel formed along said longitudinal axis of said circular shaped member, said first elongated inset channel having a first opening formed by a first pair of inset channel sidewalls integrally joined to a first channel backwall, said inset channel walls including a first upper terminating end and a first lower terminating end*, *said ends terminate partially within said first opening and spaced from each other*;

a first light strip formed from a plurality of light emitting diodes each electrically connected in parallel and physically disposed adjacent one another in series, and encased within a protective member, said first light strip cradled entirely within said first elongated inset channel between said backwall and said inset channel sidewalls and retained therein solely by said first upper and said first lower terminating ends;

a first electrical cable connected to said plurality of light emitting diodes; and

an electronic connector electrically releas[]ably connected to said power supply and said first electrical cable;

wherein said first light strip is positioned within said first elongated inset channel with said plurality of light emitting diodes aligned towards said first opening such that light from said plurality of light emitting diodes enumerates through said first opening between the terminating ends when said plurality of diodes are powered from said power supply.

'200 patent, col. 12, lines 26–60 (emphasis added).

B

GateArm sued Access Masters on November 26, 2014, for infringement of the '125 patent, and it later amended the complaint to assert infringement of the '125 patent's claims as modified on reexamination and of the '200 patent's claims as well. The parties entered into a Settlement Agreement on March 11, 2016. J.A. 1611–15. In the Agreement, Access Masters acknowledged the validity of the patents and agreed that, five months from entry of a consent decree, it would cease marketing and selling the accused product and "any other product that infringes a valid and enforceable claim" of the two patents. J.A. 1611, ¶ 1. The Agreement also states, in a provision that quotes only the '125 patent's claim 1, that Access Masters "may re-design the Accused Product" to omit certain features recited by that claim and thereby avoid infringement of both patents. J.A. 1612, ¶ 4.

Based on the Settlement Agreement, the district court entered a consent decree on March 29, 2016. The decree states that Access Masters is "permanently enjoined and restrained from manufacturing, advertising, marketing, distributing, selling, offering to sell, importing or exporting the accused 'LED Arm for a Gate' or any vehicle barrier system . . . that would infringe any valid and enforceable claim" of the '125 or '200 patents. *Consent Decree*, ¶ 1; J.A. 152, ¶ 1.

Shortly after entry of the decree, Access Masters redesigned its gate arm product. In late 2016, GateArm moved to reopen the case, asking the court to find Access Masters in contempt for marketing and selling the modified gate arm product and to enjoin such sales. On April 3, 2017, the district court referred the case to a magistrate judge, who construed disputed limitations of the '125 patent. J.A. 6; *see also Gatearm Techs., Inc. v. Access Masters, LLC*, No. 0:14-cv-62697, 2018 WL 2329164, at *1 (S.D. Fla. May 23, 2018); Order*, GateArm Techs., Inc. v. Access Masters LLC*,

No. 0:14-cv-62697 (S.D. Fla. June 8, 2018), ECF No. 101. The magistrate judge also held a two-day evidentiary hearing, at which the parties presented expert testimony, and received additional evidence after the hearing. The proceedings focused on the fact that, in Access Masters's modified product, the light-strip-retaining "fins" were no longer located at the corners of the arm surface and channel sidewalls, but had been moved along the channel sidewalls toward the channel backwall.

On April 30, 2020, the magistrate judge issued a report and recommendation, advising against finding contempt. *See Gatearm Techs., Inc. v. Access Masters, LLC*, No. 0:14-cv-62697, 2020 WL 6808670 (S.D. Fla. Apr. 30, 2020) (*Report and Recommendation*). The magistrate applied the contempt standards set forth in *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc). She found that GateArm had not proved the newly accused product to be "no more than colorably different" from the originally accused product, *see Report and Recommendation*, 2020 WL 6808670, at *16, and that Access Masters's newly accused product does not infringe, concluding that it does not have the "terminating ends" of the "sidewalls" required by the claims of the '125 patent, *see id.* at *17. The district court agreed with the magistrate judge, adopting the recommendation on August 21, 2020. *See District Court Order,* 2020 WL 4923637, at *1.

GateArm timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II

Applying Eleventh Circuit law, we review a district court's ultimate determination of contempt for an abuse of discretion. *See In re Managed Care*, 756 F.3d 1222, 1232 (11th Cir. 2014); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1304 (Fed. Cir. 2009). "'When employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of

judgment, or has applied the wrong legal standard." *Managed Care*, 756 F.3d at 1232 (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (cleaned up)).

## A

GateArm argues that the district court did not conduct the legally required review of the magistrate judge's disputed findings in reaching its decision to deny GateArm's motion for contempt. GateArm Opening Br. at 23–30, 53–60. We see no error in the district court's review that would warrant disturbing the result.

When a party objects to portions of a magistrate judge's report and recommendation, the district court must conduct a de novo review of the recommendation. *See Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). In this instance, it is sufficient that we are confident that the district court correctly applied the law to the facts and conducted the required review as to the dispositive issue discussed *infra*. "We assume that the district court performed its review function properly in the absence of evidence to the contrary." *Holt v. Crist*, 233 F. App'x 900, 901 (11th Cir. 2007) (internal quotation marks omitted). The order itself indicates that the district court properly considered both the factual and legal determinations of the report and recommendation. *See District Court Order*, 2020 WL 4923637, at *3 (discussing the statement of facts in light of GateArm's objections). And as discussed next, the district court did not overlook anything material to the result.[1]

---

[1]    We see no basis for upsetting the district court's implicit conclusion that it would consider the expert opinion of Access Masters's expert, Dr. Tipton, who testified about whether the newly accused product infringed the '125 and '200 patents. *See Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1339 (11th Cir. 2020) (deeming

B

GateArm also challenges on the merits the finding that it did not establish contempt.  GateArm Opening Br. at 30–53.  We reject this challenge.

The consent decree prohibits Access Masters from making, selling, and related activities involving a gate arm that "would infringe any valid and enforceable claim of" the '125 patent or the '200 patent.  J.A. 152, ¶ 1.  To support a finding of contempt, GateArm had to "prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes" either or both of the patents.  *TiVo*, 646 F.3d at 882.  GateArm bore "the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences." *Id.* at 883.  GateArm's infringement case was entirely one of literal infringement; GateArm did not present a case of infringement under the doctrine of equivalents.

We conclude that the district court did not abuse its discretion, in that it did not clearly err, in finding insufficient proof of literal infringement.  For the '125 patent, the magistrate judge found that "the fins or lips in [the newly accused product are] part of the channel rather than part of the upper and lower side walls [of the gate arm] as in [the previous product]."  *Report and Recommendation*, 2020 WL 6808670, at *17.  That finding precludes the "fins" or "lips" from being the "terminating end" of the gate arm "sidewall" as required by the asserted claims of the '125

---

testimony admissible when "it seems to us that most of the issues [defendant] raises with [the expert's] testimony are objections going to the weight of his testimony regarding his alternative design, and not objections to its admissibility").

patent. The district court did not err in adopting that finding of fact, and that finding suffices to reject GateArm's argument for contempt of the consent decree regarding the '125 patent.

For the '200 patent, GateArm also failed to meet its contempt-proceeding burden to show literal infringement. GateArm criticizes the magistrate judge and district court for not discussing the '200 patent more explicitly than they did when analyzing the merits of the contempt charge. But the limited nature of the judicial discussion of the '200 patent reflects the deficiency of GateArm's own case for infringement based separately on the '200 patent. GateArm has not shown harmful error, if any error, in the finding of no infringement before us.

GateArm's motion to reopen focused on the claim language of the '125 patent. *See* Motion to Re-Open, *GateArm Techs., Inc. v. Access Masters LLC*, No. 0:14-cv-62697 (S.D. Fla. Nov. 15, 2016), ECF No. 56. That focus is not surprising, given paragraph 4 of the parties' Settlement Agreement. In that paragraph, after quoting language from the '125 patent's claim 1 (as modified on reexamination), with no separate quotation from the '200 patent's claim language, the Agreement declares that "a re-designed product lacking this claim limitation shall not infringe the Patents-in-Suit," *i.e.*, *both* patents. J.A. 1612.[2] The parties also

---

[2]    "4. The Parties acknowledge that [Access Masters] may re-design the Accused Product by not including a 'first upper sidewall including a terminating end and first lower sidewall including a terminating end which ends [] partially within [a] first opening and spaced from each other . . . [and] a first light strip . . . cradled entirely within [a] first elongate inset channel . . . and retained therein solely by said terminating ends of said upper and lower side walls,' as claimed in the Patents-in-Suit, and that a re-designed product lacking this claim limitation shall not

focused on and agreed to construe only the language of the '125 patent's claims, despite initially briefing limitations from both patents. *See District Court Order*, 2020 WL 4923637, at *2 ("The parties agreed with [the magistrate judge's] assessment that only two particular phrases appearing in Claims 1, 2, and 3 of the '125 patent require construction. . . ."). Moreover, as the district court noted, the testimony of GateArm's expert, Dr. Rice, treated the two patents together and did not meaningfully differentiate between them. *See id.* at *3; *see also* J.A. 2258 (Tr. 79:15–20) (Dr. Rice testimony discussing "both the [']125 and [']200 patent").

GateArm did not present evidence essential to proving literal infringement of the '200 patent in this contempt proceeding. Indeed, it failed to map each claim limitation onto the newly accused product. *See Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014) ("[T]he patentee must show that the accused device contains *each and every limitation* of the asserted claims."). In particular, it did not present the evidence needed for literal infringement that the accused modified product's fins (required to retain the light strip), if they were part of the channel sidewalls (as the magistrate judge and district court found), were actually the "terminating ends" of those sidewalls (as the '200 patent claims require). Access Masters's expert asserted that they were not. *See* J.A. 1054–55, 2378 (Tr. 179). GateArm has not shown that this record would support a finding of literal infringement of the asserted claims of the '200 patent under the heightened burden of proof applicable to contempt proceedings. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d

infringe the Patents-in-Suit or constitute a violation of the Consent Decree or this Agreement." J.A. 1612 (first and second alterations added); *see also* J.A. 1611 (defining "Patents-in-Suit" to be the '125 patent and the '200 patent).

12    GATEARM TECHNOLOGIES, INC. v. ACCESS MASTERS, LLC

1303, 1314 (Fed. Cir. 2011) ("If the patentee fails to meet that burden [for infringement], the patentee loses regardless of whether the accused comes forward with any evidence to the contrary.").  We do not address infringement under the doctrine of equivalents, which GateArm did not press in this matter, and we do not decide whether GateArm could show infringement under the preponderance-of-the-evidence standard applicable outside the context of contempt proceedings.  *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).

## III

For the foregoing reasons, we affirm the district court's decision.

The parties shall bear their own costs.

**AFFIRMED**